UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                               )
CHUKWUMA E. AZUBUKO,           )
     Plaintiff                 )
                               )
                               )
     v.                        )
                               )
                               )   CIVIL ACTION
MBNA AMERICA BANK and EXPERIAN )   NO. 05-11777-REK
INFORMATION SOLUTIONS, INC.,   )
     Defendants                )
_____)
```

**Memorandum and Order**
October 20, 2005

### I. Pending Matters

Pending for decision are matters related to the following filings:

(1) Defendant Experian Information Solutions, Inc.'s Motion to Dismiss or, in the Alternative, Motion for More Definite Statement (Docket No. 6, filed February 28, 2005);

(2) Defendant MBNA America Bank's Motion to Dismiss (Docket No. 13, filed April 13, 2005); and

(3) Plaintiff's Motion for Summary Judgment (Docket No. 18, filed May 11, 2005).

### II. Factual Background and Procedural History

Plaintiff Chukwuma E. Azubuko a/k/a Chukwu E. Azubuko and Azubuko Chukwu initially filed this suit in the Eastern District of Tennessee at Knoxville on January 21, 2005 against MBNA America Bank ("MBNA"), a Delaware corporation, and Experian Information

Solutions, Inc. ("Experian"), a corporation with its principal place of business in Texas. (Docket No. 2.) It is unclear what plaintiff alleges is the reason for this suit. From piecing together his incoherent complaint, it seems that plaintiff had two MBNA credit cards, one with a credit limit of $800 since 1996 ("first card") and another with a credit limit of $4500 since 2002 ("second card"). (Id.) Plaintiff alleges that the second card was cancelled "[w]ithout any form of information" after MBNA received accurate, negative credit information from Experian. (Id.) Plaintiff states that MBNA "rightfully cancelled the credit line" based on this information but that Experian should have investigated the negative credit information before it reported it to MBNA since the credit information was based on repayment of a school loan that he tried to pay but his two payments that he sent or tried to make to the school loan were rejected. (Id.) It is unclear what happened to the credit line of the first card since plaintiff does not explain if or why it was cancelled in his complaint.

Plaintiff argues that if he had used his credit card, he could have been criminally charged and thus, he could have brought "malicious prosecution" charges against authorities. (Id.) Plaintiff also alleges some sort of contract claim based on unconscionability, unjust enrichment, and inequality of bargaining power; an intentional infliction of emotional distress claim; a claim under the Civil Rights Act; and a due process claim. (Id.) Plaintiff's complaint, however, possibly attempts to state other claims since the entire complaint is incomprehensible. The complaint (i) launches seven counts against defendants that do not state the legal basis or source of law for any cause of action, (ii) is full of irrelevant legal terms, (iii) is conflated with legal jargon, (iv) contains irrelevant quotes from Shakespeare, and (v) is riddled with unintelligible phrases and riddles. For example, count one alleges that

> "the [p]laintiff would like to establish jurisdiction, so that the [d]efendant would not waste invaluable time motioning timelessly under the color of the Fed. R. Civ. P. 12 these and those...The Court's jurisdiction was foursquare and venue brilliantly existed too..."

(Docket No. 2.) Count two alleges that:

> Of course, the manners the [d]efendants acted typified abuse of discretion, unconscionability or unjust enrichment and inequality of bargaining power.

(Id.) Count three alleges that

> [t]he [d]efendant (2) and its phalanxes had been a devil in the [p]laintiff's blood or they had continuously and foolishly exposed the [p]laintiff to financial nightmare. Glory, the time of reckoning had come!...

(Id.) Count four alleges that

> The [p]laintiff had been timelessly mulct[ed] or penalized even when he dropped payment two or three-day [sic] before the deadline.

(Id.) Count five alleges that

> [T]he extension of overdraft without request or knowledge of the [p]laintiff or unilaterally amounted to commercial immorality.

(Id.) Count Six alleges that

> Burger King-like or unexpected unreasonable action would not be without palpable consequences...Meeting of the mind or contract should not hinge on intentional infliction of emotional distress. It ought to associate with quiet night sleep.

(Id.) Count seven alleges that "[t]he [d]efendant (2) kissed and it had to marry too! The time to

3

check the foolhardy had come!" (Id.)  Plaintiff demands $1.5 million from MBNA, $2 million from Experian, and asks that the "[c]ourt...issue the [d]efendant permanent injunction [sic] to reinstate the credit lines expeditiously." (Id.)  Plaintiff also requests a jury trial. (Id.)

On February 28, 2005, Experian responded to plaintiff's complaint by filing a Motion to Dismiss or, in the Alternative, Motion for More Definite Statement arguing that plaintiff's complaint failed to state a claim upon which relief may be granted since Experian was under no legal duty to investigate the credit information because plaintiff failed to notify Experian that the reported information was inaccurate or disputed. (Docket No. 6.) Alternatively, Experian argues that plaintiff's complaint is so vague and ambiguous that Experian cannot reasonably frame a responsive pleading and thus, Experian has no notice of the claims asserted against it. (Id.) Thus, Experian requests that the court dismiss plaintiff's complaint with prejudice or alternatively order plaintiff to submit a more definite complaint. (Id.)

On March 15, 2005, plaintiff filed a response to Experian's motions. (Docket No. 10.) Among other things, plaintiff argued that Experian's motions "sounded diametrically illogical" and further argued that " the credit reporting should be superlatively objective central to its...deprivation...usage." (Id.) Plaintiff further asserted claims of negligence, argued that "a swallow never made a summer," and cited certain sections of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq. (2001), without explanation of their relevance to his claim. (Id.)

On March 22, 2005, Experian filed a reply to plaintiff's response acknowledging plaintiff's new possible claim of negligence and arguing that plaintiff had not and could not "allege facts sufficient to show [that] Experian deprived Plaintiff his rights under the FCRA." (Docket

4

No. 11.) Further, Experian argues that plaintiff's FCRA claims did not state a cause of action under any section cited in plaintiff's response and that plaintiff misrepresented the "import of the cited FCRA sections." (Id.)

On April 8, 2005, plaintiff filed a Succint Rejoinder to Experian's reply. (Docket No. 12.) This Rejoinder, like all of plaintiff's previous filings, was entirely incomprehensible and filled with irrelevant, confusing adages and insults. Specifically, this Rejoinder involved a discussion of locomotions, spoke of "water" in plaintiff's intestines, and may have even hinted at allegations of "kidnapping" and "assault." (Id.) Plaintiff also seemed to raise an equal protection claim within this Rejoinder, using the vague facts already argued in his complaint. (Id.) Plaintiff's Rejoinder offered no legal basis for opposition to Experian's motions.

On April 13, 2005, MBNA filed a motion to dismiss pursuant to Rule 12(b) of the Federal Rules of Civil Procedure. (Docket No. 13.) Specifically, MBNA argued that the court lacked jurisdiction over this action, venue was improper, service of process was insufficient, and plaintiff's complaint fails to state a claim upon which relief can be granted. (Id.) On April 26, 2005, plaintiff filed a response to MBNA's motion initially stating that "[t]he [d]efendant joined the crusade very late!" and that "'the snake, which pecks on the tortoise will get no meat.'" (Docket No. 16.) Plaintiff's response also discussed the now-abolished South African regime of Apartheid and dancing the Makarina, a Latin dance, at funerals. (Id.) Plaintiff's response, however, offered no legal basis for opposition to MBNA's motions.

On April 28, 2005, MBNA filed a reply to plaintiff's response arguing the same as in its earlier response and also arguing that plaintiff was excessively litigious and had filed frivolous litigation in other courts to circumvent an Order that Chief Judge Young issued against

5

plaintiff for filing suits in Massachusetts. (Docket No. 17.) MBNA also attached a Memorandum and Order from Judge Saris that reiterated Chief Judge Young's Order and stated that plaintiff had violated the Order. (Id.)

On May 11, 2005, plaintiff filed a motion for summary judgment arguing that "[i]n essence, the dice had been cast, therefore, going into trial on the case would amount to prostitution of much-needed time and energy individually and collectively." (Docket No. 18.) Plaintiff also cited the summary judgment standard and requested that the court ensure that "'justice will be done and be seen to be done' at all material times." (Id.) On May 13, 2005, MBNA filed a response to plaintiff's motion for summary judgment arguing that summary judgment should not be granted since it was too early, and that plaintiff's complaint did not comply with Rule 56 of the Federal Rules of Civil Procedure because plaintiff's motion was "wholly unsupported by any law or any citation to the record of any facts." (Docket No. 19.) On May 18, 2005, plaintiff filed a SurJoinder to MBNA's reply arguing that "the [d]efendant harped on venue again!," included a short explanation on eating "okra-soup," and stated the opinion of a deceased Nigerian musician on a Nigerian language. (Docket No. 20.) The SurJoinder did not, however, raise any legal basis for plaintiff's summary judgment motion.

On May 19, 2005, Experian filed a response to plaintiff's summary judgment motion arguing the same points that MBNA argued in its response. (Docket No. 21.) On June 3, 2005, plaintiff filed a response to Experian's response in which he quoted from Shakespeare and spoke of the marriage of Oedipus Rex, democracy, and an adage about pepper plant climbing. (Docket No. 22.) Again, plaintiff's response did not offer any legal basis for his summary judgment motion.

On June 6, 2005, plaintiff filed an opposition to MBNA's reply to plaintiff's motion for summary judgment. (Docket No. 23.) This opposition, like plaintiff's previous pleadings, spoke of apple-polishing, "intellectual humility," prostitution of time, and the paw-paw fruit. (Id.) Notably, in this opposition, plaintiff insulted Chief Judge Young by stating that "[t]he Order firstly originated from Chief Judge Young, but he lacked what it took to be a Judge, let alone a Chief Justice. He LIED on one of the [p]laintiff's case[s]...Being a Judge never meant that he had to be acting like God or the Rock of Gibraltrar [sic]...When Chief Judge Young acted outside the prescriptions of the law, he enjoyed no judicial immunity." (Id.) (emphasis in original). Plaintiff then demanded that "[d]efendant...refrain from injection of its fingers into its anus for purpose [sic] of smelling them." (Id.) Plaintiff then insulted Judge Zobel by arguing that her requirement that plaintiff follow Chief Judge Young's Order was "judicial colonization" and that Judge Zobel committed a "13th Amendment [violation] - on slavery." (Id.) On June 20, 2005, plaintiff filed an addendum to his opposition arguing that "there was no water in [his] mouth!" and that "[d]efendant expected the [p]laintiff to shave his teeth and it forgot that there was no hair on [plaintiff's] teeth." (Docket No. 24.) Plaintiff offered no legal basis or source for his summary judgment motion within this addendum.

On August 22, 2005, Judge Phillips of the Eastern District of Tennessee at Knoxville transferred this case to the District of Massachusetts granting MBNA's motion to dismiss for improper venue. Judge Phillips found that plaintiff filed suit in Tennessee, which had no connection to this suit or the parties since "[n]either the complaint nor plaintiff's subsequent pleadings proffer any connection to the State of Tennessee, much less any reason why this case should proceed in the Eastern District of Tennessee." Azubuko v. MBNA America et al., 2005

WL 2139407 at *1 (E.D. Tenn. Aug. 22, 2005). Judge Philips believed that "in light of the Massachusetts' court's order in plaintiff's previous cases, judicial economy require[d] that this case be transferred to that court for proper resolution." Id. at *2.

### III. Analysis

**A.   Plaintiff's Extensive Litigation History**

It is important to note plaintiff's extensive litigation history, as outlined in Judge Saris' Memorandum and Order in two Miscellaneous Business dockets. See Azubuko v. Commonwealth Auction Association, No. 03-10053-PBS (December 17, 2003) and Azubuko v. National Magazine Exchange, No. 03-10063-PBS (December 17, 2003). Plaintiff has been a plaintiff in about thirty-three actions as Chukwu or Chukwuma Azubuko and in at least eleven actions as Azubuko Chukwu in this district alone. Within the federal courts of the United States, plaintiff has filed or appealed more than one hundred actions.

**B.   Orders and Sanctions Issued by the District of Massachusetts Against Plaintiff**

It is equally important to note the Orders and sanctions instituted against plaintiff. On September 6, 1995, Chief Judge Young issued an Order against plaintiff in Azubuko v. Registry of Motor Vehicles, No. 95-11661-WGY, after dismissing plaintiff's complaint for failure to state a claim. In his Order, Chief Judge Young stated that the Clerk was directed not to accept for filing any further documents of the plaintiff, acting *pro se*, unless "(1) [the] document [i]s accompanied by a motion seeking leave of court to file same and (2) a judge of the court grants plaintiff leave to file the document." Id. at 9. Absent compliance, "the Clerk must return the tendered document to plaintiff." Id. Notably, since the entry of Chief Judge Young's 1995

Order, plaintiff has filed at least seventy-five actions in other courts and most of these actions, according to Judge O'Toole, have been filed "in an apparent effort to avoid the filing conditions set by Chief Judge Young." Azubuko v. Urban Edge Property Management et al., No. 05-10066-GAO at 6-7 (Feb. 24, 2005).

A little over eight years after Chief Judge Young's Order, on December 17, 2003, Judge Saris noted that plaintiff attempted to circumvent Chief Judge Young's Order by filing actions in other state courts that had no connection to the events or charge(s) in his complaint. Commonwealth Auction Association, 03mc10053-PBS at 6. Judge Saris also noted that plaintiff's compliance with Chief Judge Young's 1995 Order was a requisite, notwithstanding that plaintiff may have filed actions in other districts. See Commonwealth Auction Association, 03mc10053-PBS at 9 (stating that "[i]f plaintiff wishes to proceed with any of these [transferred] actions, his motion seeking leave must contain a certification under oath that there is a good faith basis for their filing").

Three months later, on March 31, 2004, Chief Judge Young ordered that plaintiff pay to the Board of Bar Overseers of the Commonwealth of Massachusetts the sum of $500 as partial compensation for its efforts in litigating the case of Azubuko v. Board of Bar Overseers of the Supreme Judicial Court, C.A. 04-10192-WGY. Chief Judge Young also ordered a monetary sanction against plaintiff in light of his propensity to file frivolous lawsuits in district courts across the country. Plaintiff was fined $5,000, which was suspended until and unless, without prior approval by a judicial officer, plaintiff files any action in any United States court that is subsequently found to be frivolous.

Less than a year later, on February 24, 2005, in Urban Edge, No. 05-10066-GAO

9

at 6-7, Judge O'Toole found that plaintiff had not "complied with any of the conditions found in Chief Judge Young's 1995 Order, primarily because he filed the case in [another] District...as a means to pursue the litigation." Id. at 9. Judge O'Toole noted that plaintiff is still under Chief Judge Young's leave-to-file Order, even if his case is transferred to the District of Massachusetts from another district. See id. at 7 (finding that "plaintiff circumvented Chief Judge Young's 1995 Order when four of plaintiff's previous actions were transferred to the District of Massachusetts"). Judge O'Toole put plaintiff on notice that "further abuses by...plaintiff will result in the imposition of additional monetary sanctions (apart from the $5,000 sanction imposed by Chief Judge Young)." Id. at 12. Judge O'Toole further stated that plaintiff "is warned that further abusive filings may result in the imposition of...contempt proceedings." Id. at 14.

Nevertheless, less than three months later, on May 10, 2005, Judge Zobel, in her Order, reiterated what Chief Judge Young and Judge Saris stated in their previous Memorandum and Orders and ordered that plaintiff "not file any documents in this court or cause any documents to be filed in this court by **transfer** or otherwise, without including with such document a motion for leave to file same, and...[t]hat a violation of this order may give rise to sanctions..." Chukwuma Azubuko v. Catherine H. Gallagher Cooperative Housing, et al., No. 05-10068-RWZ (emphasis added). Accordingly, when plaintiff files actions in other district courts that are later transferred to this court, plaintiff should file a motion for leave to file within thirty-five days of transfer, as previously stated by Judge Saris, or plaintiff will be in violation of Chief Judge Young's original Order.

Other courts in other districts have also imposed filing restrictions on plaintiff. See, e.g., Azubuko v. Assie, No. 01-7688 (2nd Cir. 2002); Azubuko v. Giorlandino, No. 99-

7337, 2000 WL 553184 (2nd Cir. 2000); Azubuko v. U.S. Dep't. of Justice, No. 403cv086 (S.D. Ga. 2003) (forewarning plaintiff of possible sanctions, including criminal contempt and incarceration); Azubuko v. Massachusetts Turnpike Authority, No. 03-173-RWS (N.D. Ga. 2003); Azubuko v. Berkshire Mutual Insurance Company, et al., No. 03-1580-BBM (N.D. Ga. 2003).

**C.    Sanctions**

For the reasons given below, I find that a judgment against plaintiff, dismissing his complaint with prejudice, is warranted since he has circumvented Chief Judge Young's Order numerous times and is wasting the judicial resources of this court and the time of defendants with his "vexatious" filings made in "bad faith."  I also find that plaintiff willfully fails to comply with court Orders.

"One of the central purposes of [Fed. R. Civ. P.] Rule 11 is to protect parties and the court from wasteful, frivolous, and harassing lawsuits, and the rule provides for sanctions as a deterrent to such abusive conduct." Jones v. Social Security Admin., 2004 WL 2915290 at *3 (D. Mass. Dec. 14, 2004).  Under Rule 11, therefore, this court may impose sanctions on an unrepresented party if he or she submits a pleading for an improper purpose or if the claims within it are frivolous or malicious.  See Fed. R. Civ. P. Rule 11(b)(1), (2); Eagle Eye Fishing Corp. v. Dep't of Commerce, 20 F.3d 503, 506 (1st Cir.1994) (holding that proceeding *pro* se "is not a license not to comply with the relevant rules of procedural and substantive law").  "The imposition of a Rule 11 sanction usually serves two main purposes: deterrence and compensation....[and] [e]ncompassed within these objectives are several related subsidiary goals, e.g., punishing litigation abuse and facilitating case management." Navarro-Ayala v. Nunez, 968

11

F.2d 1421, 1426 (1st Cir. 1992).

Outside of Fed. R. Civ. P. 11, courts have the inherent power to impose sanctions for abuse of the judicial system. Chambers v. NASCO, Inc., 501 U.S. 32, 49 (1991). Accordingly, a district court has the power to enjoin a party from filing frivolous and vexatious lawsuits. A frivolous lawsuit is one "[l]acking a legal basis or legal merit; not serious; or not reasonably purposeful." Black's Law Dictionary, 2nd P. Ed. at 296 (2001). Vexatious conduct occurs where a party's actions are "frivolous, unreasonable, or without foundation" even without the presence of "subjective bad faith." Local 285 Serv. Employees Int'l v. Nontuck Res. Assoc., Inc., 64 F.3d 735, 737 (1st Cir. 1995). Thus, sanction is appropriate when "objectively unreasonable litigation-multiplying conduct continues despite a warning to desist." Alexander v. United States, 121 F.3d 312, 315-16 (7th Cir. 1997). Rule 11 does not exclude *pro se* plaintiffs from possible sanction. See Fed. R. Civ. P. 11(b).

The various factors that may be considered in determining whether sanctions under the rule are warranted include

> "[1][w]hether the improper conduct was willful, or negligent; [2] whether it was part of a pattern or activity, or an isolated event; [3] whether it infected the entire pleading, or only one particular count or defense; [4] whether the person has engaged in similar conduct in other litigation; [5] whether it was intended to injure; [6] what effect it had on the litigation process in time or expense; [7] whether the responsible person is trained in the law; [8] what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; and [9] what amount is needed to deter similar activity by other litigants.

Fed. R. Civ. P. 11 advisory committee's note (1993).

These factors tilt strongly in favor of sanctions against plaintiff. First, even if plaintiff is given the benefit of the doubt that he believed that he had a legally cognizable claim against defendants, which is questionable, plaintiff still filed this complaint in bad faith when he attempted to circumvent Chief Judge Young's Order and filed his complaint in Tennessee. Plaintiff knew that venue was improper when he filed this suit in Tennessee since no contact to Tennessee existed within the entire case. MBNA is a Delaware corporation, Experian is a corporation with a principal place of business in Texas, and plaintiff is a Massachusetts resident. The only possibly permissible course would have been to sue in Massachusetts since the alleged injury, if any, occurred in Massachusetts, and that is where plaintiff resides. Plaintiff, however, decided to file suit for an injury that allegedly occurred in Massachusetts against Texas and Delaware corporations in Tennessee. As Judge Phillips noted before he transferred this case to Massachusetts, "plaintiff appears to have filed his case in [Tennessee] solely due to being instructed by courts in his own jurisdiction that he could no longer file civil actions without risking sanctions." MBNA America et al., 2005 2139407 at *2. Plaintiff has previously been warned by decisions of judges of this court that compliance with Chief Judge Young's 1995 Order is a prerequisite although actions are filed in another district. See Commonwealth Auction Association, 03mc10053-PBS; Urban Edge, 05-10066-GAO. Still, plaintiff filed this action in Tennessee and did not request leave to file in this court once the Tennessee district court transferred his case to Massachusetts. He has had more than thirty-five days to do so and still has not sought leave.

Notably, plaintiff has been warned by a Texas district court about filing too many lawsuits in Texas. Azubuko v. Adams, Slip Copy, 2005 WL 2415943 (N.D. Tex. 2005).

Similarly, plaintiff has been put on notice that his filing in other districts to circumvent Chief Judge Young's Order is being noticed by districts in Delaware. <u>Azubuko v. Commissioner of Police</u>, Slip Copy, 2005 WL 914779 (D. Del. 2005). Tennessee, in contrast, has not warned plaintiff or noted plaintiff's attempt to circumvent Chief Judge Young's Order (until Judge Phillips' Order to transfer decided on August 22, 2005). At most, Tennessee has not allowed plaintiff to proceed in forma pauperis and dismissed his claims. <u>See</u>, <u>e.g.</u>, <u>Azubuko</u> v. <u>Frederick Douglas Charter School</u>, 05-mc-00011 (Jan. 31, 2005). Therefore, it is more likely than not that plaintiff filed this suit in Tennessee, in bad faith, expecting to circumvent not only Chief Judge Young's Order here in the District of Massachusetts but also the warning issued in the District of Texas and the observation in the District of Delaware, the other potentially acceptable places for venue in this case.

      Plaintiff may not have the ability to understand the law or rules of courts as easily as a trained attorney, but plaintiff, beyond his incoherent complaint, is not the "moronic child," to which he refers within his pleadings. Instead, this is a plaintiff who has filed close to one hundred claims across the federal courts in the United States, says he has received a Masters in Education from the University of Massachusetts, and says he is a substitute teacher for the Boston public schools. Moreover, plaintiff exemplifies within his incoherent complaint that he certainly has a command of vocabulary, using words such as "phalanxes," "mulct" and "tergiversation" to insult defendants. An individual who has the type of background he asserts he has would be able to understand a plain and simple Order requiring him to ask for leave before filing a complaint. Indeed, since plaintiff chose to file actions that should have been brought in Massachusetts in other states, plaintiff's actions indicate that he understands the Order but instead chooses not to

14

follow it.

Second, plaintiff's alleged causes of actions within this case are similar to all of the causes of action that he has filed in districts across the United States that have subsequently been dismissed. See, e.g., Azubuko v. Story, 2005 WL 1027245 at *2 (M.D. Fla. Apr. 6, 2005) (finding that plaintiff's complaint was "an example of a frivolous filing prohibited by Rule 11"); Azubuko v. Massachusetts State Police, 2004 WL 2590502 at *1 (E.D. Pa. Nov. 12, 2004) (dismissing plaintiff's complaint with prejudice since any amendment to complaint would be futile and warning plaintiff that future frivolous filings may result in sanctions); Azubuko v. United States, No. 99-02395 (October 2, 2000) (granting defendant's motion to dismiss pursuant to Rule 12(b)(1)-(3), (5), and (6)). Moreover, plaintiff, after the issuance of Chief Judge Young's Order, still filed at least seventy-five additional cases in other district courts, mostly in an effort to avoid the filing conditions set forth by Chief Judge Young. Indeed, it is more than ten years after Chief Judge Young's Order and plaintiff is still doing what Chief Judge Young ordered him not to do - filing frivolous lawsuits without seeking leave to file first. Thus, plaintiff's behavior is a pattern instead of a single, isolated event.

Third, plaintiff's rambling complaint and other pleadings have used up a substantial amount of time in the litigation and judicial processes. MBNA and Experian had to defend against frivolous, insulting, incoherent pleadings, and district courts in both Tennessee and Massachusetts had to use their judicial resources in sifting through plaintiff's complaints and pleadings, thus taking time away from attention to claims of other litigants and other matters on the courts' dockets. Had plaintiff adhered to what Chief Judge Young ordered, and requested leave to file this complaint, he would have avoided an unnecessary waste of litigation and judicial

resources since a cursory glance at plaintiff's complaint would have revealed its frivolous nature. The fact that plaintiff filed this action in an apparent effort to escape Chief Judge Young's Order therefore illustrates that plaintiff has no thought or care about the judicial resources or litigation expenses that he has caused others to incur by his actions.

Given that plaintiff says he makes only $600 bi-weekly as a substitute teacher for the Boston School Department, one would expect that Chief Judge Young's suspended monetary sanction of $5,000 would be an appropriate sanction to deter plaintiff from his litigious activities. Plaintiff has proved, however, through the filing of this case and others, that he is not deterred. As Judge O'Toole stated, "it is clear that plaintiff is just not getting the message of this [c]ourt, and he continues to waste the judicial resources of this [c]ourt and others." Urban Edge, No. 05-10066-GAO at 11. Accordingly, Judge O'Toole reasoned that "further sanctions appear to be necessary to ensure plaintiff recognizes the seriousness of his continued abuse of the judicial system." Id. Plaintiff has faced leave-to-file restrictions, a $5,000 fine, possible additional monetary sanctions, and possible contempt proceedings. Still, despite these actual and potential sanctions, nothing seems to stop him.

On August 5th, 2005, plaintiff again circumvented Chief Judge Young's Order by filing suit against Judge Saris and Judge Zobel, judges who dismissed his claims and reinforced Chief Judge Young's Order to plaintiff, alleging violations of his federal civil rights. See Azubuko v. Saris et al., No. 05-cv-04037-JAP-MCA (Aug. 18, 2005); Azubuko v. Zobel et al., No. 05-cv-03888-JAP-MCA (Aug. 17, 2005). The district court dismissed both suits and one Judge imposed leave-to-file restrictions on plaintiff. Plaintiff filed both of these suits in New Jersey instead of Massachusetts despite the fact that Massachusetts was where the rulings on his case

were made and his alleged "injuries" occurred. It is clear, therefore, that plaintiff is not fazed by the Orders of the district of Massachusetts.

Therefore, based on the fact that plaintiff's claims against MBNA and Experian are vexatious since (i) plaintiff admitted within his complaint that MBNA "correctly cancelled" his second card account, (ii) the claims of "assault," and "kidnapping," as well as the semblance of the FCRA claim are unreasonable, particularly when plaintiff alleged no facts to support his assault or kidnapping claims and when a cursory glance at the FCRA would reveal that the FCRA claim was unfounded, and because plaintiff shows a lack of respect for judicial resources, Orders, or time, I will order a judgment against plaintiff's complaint that dismisses his claim, with prejudice. See John's Insulation, Inc. v. L. Addison & Associates, Inc., 156 F.3d 101, 109 (1st Cir. 1998) (finding no abuse of discretion when district court, under inherent powers, dismissed complaint and entered default judgment as sanction for plaintiff's "protracted delay and repeated violation of court orders").

I find that a dismissal of plaintiff's complaint with prejudice based solely on plaintiff's actions is proper, particularly since this is not the first time that this District has dismissed plaintiff's action with prejudice because of his "bad faith" filing. See, e.g., Urban Edge, No. 05-10066-GAO at 12 (stating that plaintiff's action was dismissed with prejudice as a "proper sanction"). Accordingly, plaintiff's complaint is dismissed with prejudice.

## ORDER

For the foregoing reasons, it is ORDERED:

(1) Plaintiff's Complaint (Docket No. 2) is DISMISSED with prejudice.

17

(2) Defendant Experian Information Solutions, Inc.'s Motion to Dismiss or, in the Alternative, Motion for More Definite Statement (Docket No. 6) is DISMISSED AS MOOT.

(3) Defendant MBNA America Bank's Motion to Dismiss (Docket No. 13) is DISMISSED AS MOOT.

(4) Plaintiff's Motion for Summary Judgment (Docket No. 18) is DISMISSED AS MOOT.

(5) The Clerk is directed to enter forthwith on a separate document a Final Judgment as follows:

Plaintiff's Complaint (Docket No. 2) is DISMISSED with prejudice.

_____/s/Robert E. Keeton___
Robert E. Keeton
Senior United States District Judge