UNITED STATES' DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NUMBER:
05-11777-REK

AZUBUKO -
   Plaintiff

v.

MBNA AMERICA BANK & EXPERIAN
INFORMATION SOLUTIONS, INC. -
   Defendants

**PLAINTIFF'S FIRST AND LAST MOTION FOR RECONSIDERATION**

    The Plaintiff received the Court's "Final Judgment" and "Memorandum and Order" dated 20th instant and postmarked 21st *instant* on Saturday - 22nd October – 2005. The Plaintiff painstakingly read the verdict and deemed it intelligent and constitutional to submit the head. It could be a judicial taboo, but the rule of law had to prevail, at all material times. Indeed, feelings would not be a resounding substitute for thinkings. The bases for the head would be thus:

    01)    During the hearing on the 11th instant, one needed not to be a rocket scientist to understand that the rule of law or the common law merits of the case were substituted for the cancerous unconstitutional order of Judge William Young, which restricted the Plaintiff's <u>direct access</u> to the Court. Anyone who understood the United States' Constitution and Law would not condescend to restriction of anyone's access to courts. The usage of courts when seasonable had bearings on freedom of speech. [First Amendment; Fifth and Fourteenth Amendments] Consciously, permanent residents of Bedlam[1] would not act so! The measure was unlawful and unconstitutional, indeed! [*Harrison v. Springdale Water & Sewer Comm.* (1986, CA8 Ark) 780 F2d 1422; *Armstead v. Pingree* (1986, MD Fla) 629 F Supp. 273] It should be noted that Judge Young should not have presided over the case. There was a [constructive] conflict of

---
[1] A psychiatric hospital that used to be located in London.

interest: he used to work for Massachusetts before he came to the bench federally. Again, feelings should be distinguished from thinkings. Emotionalization of jurisprudence would not be to the maximum, let alone optimum interest of administration of justice. The Saddam-Hussienistic and Bin-Ladenistic methodology to interpretations of constitutional law would be a legal shoal to mankind. Excerpts in that respect read thus:

"Constitutional 'rights' would be of little value if they could be indirectly denied." [*Gomillion v. Lightfoot*, 364 U.S. 155 (1966), cited also in *Smith v. Allwright*, 321 U.S. 649.644]

"There can be no sanction or penalty imposed upon one because of his exercise of constitutional rights." [*Sherar v. Cullen*, 481 F.2d 946 (1973)]

"Under Federal law which is applicable to all states, the United States Supreme Court stated that if a court is "without authority, its judgments and orders are regarded as nullities. They are not voidable, but simply void; and form no bar to a recovery sought, even prior to a reversal in opposition to them. They constitute no justification; and all persons concerned in executing such judgments or sentences, are considered, in law, as trespassers." [*Elliot v. Piersol*, 1 Pet. 328, 340, 26 U.S. 328, 340 (1828)]

02)    It would be a constitutional law anathema to base the ruling on the case on what associated with the Plaintiff's previous cases. The Plaintiff was not the author of *double jeopardy* [constitutional law] doctrine. Two instances had not been the same legally! The common law merits of the case had been immolated or sacrificed devoid of moral qualm. Oh, "man makes the land not to be good." Consciously, Judge Keaton did not write the final judgement! It lent itself to sociological concept of realities' construction.

03)    The restrictive order of Judges Young should be dissociated from the case central to *sub judice*. The Plaintiff legally questioned the constitutionality of the God-sent Order. Judge Saris usage of it to dismiss the Plaintiff's cases was legally questioned too. The Plaintiff would not like or allow anyone to treat him like a moronic man. The Plaintiff qualified not as someone with *diminished responsibilities*, in a state of grace to merit cases approval. The Plaintiff could approve it for those who aimed at such. The Plaintiff would not allow anyone to urinate on his head and the person strove to convince the Plaintiff that it was raining. In all modesty, the Plaintiff was not bankrupt of

intelligence: all things being equal, the Plaintiff could think critically and creatively like anyone under the sun.

04) The verdict hitherto mountainously violated the law. [28 USC Sections 1364(b), 1357 and 1361; 42 USC Sections 1983, 1985(3), 1986 and 1994] The verdict lent itself to "clear absence of all jurisdiction." When that exited or prevailed, judicial immunity evaporated. An excerpt read:

> "In addition, the Supreme Court has previously held that it is inappropriate to create a distinction between state and federal officials for the purposes of immunity as follows: There is no basis for according to federal officials a higher degree of immunity from liability when sued for a constitutional infringement as authorized by Bivens than is accorded state officials when sued for the identical violation under Section 1983. The constitutional injuries made actionable by Section 1983 are of no greater magnitude than those for which federal officials may be responsible. [*Butz v. Economou*, 438 U.S. 478, 500, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). We have similarly stated that the immunities provided federal officials in Bivens actions are co-extensive with those provided state officials from Section 1983 actions. *See Abella v. Rubino*, 63 F.3d 1063, 1065 (11th Cir. 1995); *Charles v. Wade*, 665 F.2d]

05) The Plaintiff did not waste any court's resources. The courts historically wasted the Plaintiff invaluable time unquantifiably. The Plaintiff could petition for Congressional investigation on the insipid and hypocritical manners the Plaintiff's cases had been dealt with. The cases the Plaintiff filed were ripe, but were condemned to proverbial judicial abracadabra. Glory, nobody had sued the Plaintiff for *malicious prosecution*. Without digressing, for the case in question, how much would the Plaintiff be indebted to the Defendants for alleged prostitution of their fiscal and physical resources? Certainly, none, but the Plaintiff was seen as a patient of mad cow disease in some quarters judicially. Consciously, there were methods to the Plaintiff's so-called madness. In life, many needed philosophical reconstruction hand holding, but shyness incapacitated them from making the request. That was bad! Animals if scratchy recourse/d to the trees, but man recoursed to fellow-man. "Man" stopped and shopped, but failed to stop/ping and think/ing. At all times, the Plaintiff deemed life to be likenable to his mother's breasts, which he shared with his siblings alternately and mandatorily. Could that apply to the Court? It defied logic that man with his a little wisdom became head swollen or arrogant, so much so that he competed with God as the creator of the universe. If the Court would be a truth-teller, the Plaintiff was not a devil

in anyone's blood: the Plaintiff only crusaded for the removal of the chimpanzee's hands from the soup, because they resembled the one's of human being. Such a propensity or demand was not a legal or judicial tall order!

06) The Plaintiff could not understand the rationale/s for the Court's palpable anger at the Plaintiff's usage of courts. Should the Plaintiff take the law into his hands when wronged? The Plaintiff knew the consequences just like the Court. The Plaintiff would not elect to cook/ing his fingers, because they resembled hot-dogs. If the Plaintiff wanted to eat Chinese food or Dunkin' Donuts, he knew where to get it/them. The Plaintiff did not come to the Court for that/them. Then, what justified the anger or stricture? The Plaintiff would not engage in the burial of others or his enemies while holding tenaciously to his brief-case. Certain places were meant for certain need. Hannah was in the synagogue with Eli when fruit of womb or child bearing was her desideratum hence the birth of Samuel. Hospitals were meant for those who were sick or ill. Of course, "my master will do something with the drink: but what else will the master do with it than drinking?" If the Court would agree with the Plaintiff, factly, invaluable time should not be prostituted with individually and collectively. The jurisprudence of precedents mass destruction should be checked promptly.

## CONCLUSION

Succinctly, it should not be forgotten that the Plaintiff enjoyed freedom of speech within the constitutionally perimeters. More, central to the prodigalities of God's love and grace, the Plaintiff had not been psychiatrically hospitalized and the handholding condemnation prior to commencement of any proceedings was diametrically unconstitutional and apeish. The Court should feel its ears burning. The Court needed not to love the Plaintiff, but it needed not to harm or hurt the Plaintiff. The importance of the rule of law would not be over-emphasized. Indeed, failure to enforce the law had been actionable [from time immemorial] The Court should reverse its unscientific and unconstitutional verdict, because it lent itself to practically innumerable conclusions. If the Court would agree with the Plaintiff, "the source of water should not be polluted." Everyone would be interrogated for her/his conduct sooner or one-day. Nobody knew the thoughts of God! Man encoded, but God majestically decoded. With candor in

communications, the Plaintiff was not crying for any judicial moon. The allegoric/al constitution and law should not be doctored, so as to achieve one's inordinate ambitions. Of course, "man" spoke first, but the law spoke last. Reiteratively, the verdict, which had no live signature of the author, should be modified. Nobody should declare war against the Constitution and Law of the United States and won. Certainly, "Sometimes, Homer, nods."

It would not be a sophism for the Plaintiff to say/ing that the Court should not enlist itself in the notorious and condemnable 'judicial colonization.' The slashed-and-burnt or head in the sand jurisprudence typified cancerous judicial *modus operandi*. The importance of moral qualm or judicial restraint would not be over-emphasized. "What affected the eyes affect the noses." S/he who killed her/his sibling/s would live in the world alone. Therefore, it would not be unintelligent to saying that one should allow her/his sibling/s to live like her/his/their contemporaries. Additionally, pusillanimity in the course of interpretations of the matchless Constitution and Law of the United States would be an avenue for lost-lost scenarios. Given the prevalence, would it be [superlatively] intelligent? Would it be an avenue for inter-generational equity? If the Court would agree with the Plaintiff and in the Plaintiff's ways of thinking, the answers would not be in the affirmative. 'S/he who is counseled should listen, because the world is mysterious.' Could intellectual humility, intellectual courage and faith-to-reasons be given chances? The Plaintiff aimed not [at] making enemy of anyone, but it would be hypocritical to interpret the law or administer justice selectively or central to one's mercurial dubious whimsicalities. The Plaintiff's access to court restrictive order should not be the *ratio-decidendi* for the case, at all. It could be challenged legally too under 28 U.S.C. Section 1361! Indeed, it would not be scientifically intelligent to join/ing the club of judicial colonizers. The world had been watching and natural law regulated moral authority over any philosophical dispute or polarization. The world appeared spacious for all! Upon the Plaintiff's honor, the Plaintiff was not crying for any legal or judicial moon. The judicial [constructive] colonization or apartheid should be rectified for the sake of posterity. The world had been likened to a market – coming and going.

Respectfully submitted on Monday – October 24th – 2005.

_____
CHUKWUMA E. AZUBUKO,
Pro Se,
P. O. Box 1351,
Boston – MA 02117-1351.
Telephone: (617) 265 6291.

### CERTIFICATE OF SERVICE

The Plaintiff certified under the penalties for perjury that a true copy of the head was served upon the Attorneys of record for the Defendants as captioned via the United States' Postal Service pre-paid first-class mail on Tuesday – October 25th – 2005 thus:

01) Robert F. Chapski & Nelwyn Inman, Esquires,
BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ,
2200 Riverview Tower,
900 South Gay Street,
Knoxville – TN 37902 and

02) Donald T. Hill, Esquire,
EGERTON, McAFEE, ARMISTEAD & DAVIS, P.C.,
P. O. Box 2047,
900 South Gay Street,
Suite 1400,
Knoxville –TN 37901

_____
CHUKWUMA E. AZUBUKO,
Pro Se.